Ross F. BROOKS and Another, Plaintiffs, *v.* WALTER B. WYMAN and Others, as Trustees of Central School District No. 3 of the Town of Crown Point, Essex County, and as Such Trustees Comprising the Board of Education of Said District, Defendants.

Supreme Court, Essex County, October 2, 1926.

Schools — action to restrain trustees of central school district from issuing bonds for erection of school building — district meeting authorized, by majority of two, expenditure of $105,000 for school building and site — said amount was more than fifteen per cent of assessed valuation of district — under Education Law, §§ 467 and 480, two-thirds consent was necessary to authorize amount stated — trustees proceeded to issue bonds within fifteen per cent limitation — aggrieved parties not limited by Education Law, § 890, to appeal to Commissioner of Education — trustees had no right to reduce amount voted so as to bring it within fifteen per cent limitation — action by trustees was void — issuance of bonds restrained.

This is an action to restrain the trustees of a central school district from issuing bonds. A district meeting voted to raise $105,000 for the purpose of erecting

a new schoolhouse and for the improvement of a new site. The resolution was carried by a majority of two. The amount voted was more than fifteen per cent of the assessed valuation of the district and the resolution was not carried by a two-thirds vote as required by section 480 of the Education Law in cases where more than fifteen per cent of assessed valuation is voted to be raised. The trustees proceeded to issue bonds for $92,000, which amount was less than fifteen per cent of the assessed valuation.

The contention by the trustees that the plaintiffs are limited in their remedy by section 890 of the Education Law to an appeal to the Commissioner of Education cannot be sustained for it was not the purpose of the Education Law to grant to the Commissioner judicial powers nor to prevent taxpayers from seeking the aid of the court on questions relating to taxation, and it is not necessary for persons aggrieved as a condition precedent to the maintenance of an action, to first appeal to the Commissioner of Education.

Under section 467 and subdivision 1 of section 480 of the Education Law, which require a two-thirds vote to authorize a school district expenditure in excess of fifteen per cent of the assessed valuation, the trustees, where an expenditure in excess of fifteen per cent has been illegally authorized by a district meeting, cannot reduce the amount authorized by the meeting so as to bring it within the fifteen per cent provision, for the trustees are bound by the action of the district meeting and cannot proceed in a manner not authorized by that meeting.

MOTION by defendants for judgment on the complaint in an action by taxpayers to restrain trustees of school district from issuing bonds.

*Roy Lockwood,* for the plaintiffs.

*Ralph E. Rogers,* for the defendants.

HEFFERNAN, J. The plaintiffs, as taxpayers of Central School District No. 3 of the town of Crown Point, Essex county, have brought this action against the defendants, as trustees of such district and constituting the board of education, to restrain the issuance of school bonds aggregating $92,000 and to prohibit the defendants from pledging the credit of the district for the payment thereof.

The defendants have not answered but have moved for judgment on the complaint on the ground that the court has no jurisdiction of the suit and that such complaint fails to state facts sufficient to constitute a cause of action.

On February 19, 1926, the defendants gave notice that a special meeting of the board of education would be held on the 11th day of March, 1926, for the purpose of voting upon the following question: " Shall the district authorize the erection of a new school building and the improvement of the site thereof, and raise therefor by tax upon the taxable property of the district the sum of one hundred five thousand dollars ($105,000) to be collected in annual installments as provided by section 467 of the Education Law? "

At the meeting held pursuant to the call a resolution was presented calling for the erection of a new school and for the preparation and improvement of a new site, and directing that plans and specifications be prepared for such improvements, and that there be expended for those purposes the sum of not more than $105,000, and that such amount should be raised by taxation on the taxable property of the district and collected in thirty annual installments. The total vote cast was one hundred and eighty-six, of which ninety-four were recorded in favor of the resolution and ninety-two opposed thereto. The resolution was, therefore, adopted by a majority of two votes.

It is conceded that at the time the notice was given and the election held this school district had an aggregate full valuation of real property in excess of $500,000 and that a bond issue in the sum specified in the resolution would make the total bonded indebtedness exceed fifteen per cent of the valuation of such real property. It also appears by computation that $92,000 is less than fifteen per cent of such valuation.

On the 26th day of May, 1926, the defendants convened a special meeting of the board of education and adopted a resolution reciting, in substance, the result of the election held on March 11, 1926, the total assessed valuation of the real property of the tax district, that $92,000 is less than fifteen per cent of such valuation, a statement to the effect that the board of education is authorized by virtue of the provisions of the Education Law to issue bonds in the amount of $92,000 and that bonds aggregating the latter amount should be issued for the purpose of erecting a new school building and for the preparation and improvement of a new site. Provision is also made in this resolution for all details in relation to the bond issue.

Acting under the authority of this resolution, the defendants advertised, received and opened bids for these bonds, and the bonds have been allotted to the successful bidder but have not yet been issued. The plaintiffs are seeking to enjoin such issue on the ground that the action of the defendants is unauthorized, illegal and void.

The defendants insist that by virtue of the provisions of section 890 of the Education Law,* the exclusive remedy of the plaintiffs is an appeal to the Commissioner of Education, that his determination thereon is final and that the court has no jurisdiction whatsoever of the questions involved in this litigation. That section, so far as material here, provides:

* Formerly § 880; renum. by Laws of 1918, chap. 252.— [REP.

" Any person conceiving himself aggrieved may appeal or petition to the commissioner of education, who is hereby authorized and required to examine and decide the same; and the commissioner of education may also institute such proceedings as are authorized under this act and his decision in such appeals, petitions or proceedings shall be final and conclusive, and not subject to question or review in any place or court whatever. Such appeal or petition may be made in consequence of any action:

" 1. By any school district meeting; * * *

" 7. By any other official act or decision of any officer, school authorities, or meetings concerning any other matter under this chapter, or any other act pertaining to common schools."

By the provisions of this statute the Commissioner of Education is made the executive officer of the Education Department of the State. The Legislature has conferred upon him jurisdiction to summarily hear and determine all controversies arising in the administration of the State's system of education, and in the matters thus committed to him his decision " shall be final and conclusive, and not subject to question or review in any place or court whatever." The reason underlying the enactment of this statute, undoubtedly, was to confer on the Commissioner complete supervision and control of our public schools for the purpose of promoting efficiency and his decision in all matters relating thereto is made final and conclusive. He is clothed with extensive *quasi* judicial authority in the determination of such controversies. Although his powers are broad, they are, nevertheless, not general and unlimited. His jurisdiction extends only to the control. management and administration of the school system and to the personnel, control and discipline of the officials thereof. It is obvious from reading this section that the authority of the Commissioner is limited to a decision of controversies regarding the action or failure of action of bodies or individuals that are agencies of the Education Department and engaged in conducting the educational work of the State. These bodies and agencies unquestionably are subject to the undisputed authority of the Commissioner and are bound to obey his commands. The statute, however, does not assume to invest him with authority to subject the property of the inhabitants of a tax district to the imposition of a tax without their consent evidenced in the manner provided by law. The question presented here does not relate to any of the subjects concerning which the Commissioner has exclusive jurisdiction. The proposition involved in this case is primarily one of taxation affecting the property of the tax district and relating only incidentally to the subject of education. The argument that a

taxpayer, whose property rights are affected by the action of the defendants, has no right to seek relief in the established tribunals of the State, and that his sole remedy is an appeal to an official possessing only *quasi* judicial authority, whose decision is the last word on the subject, is, to say the least, quite startling. I am not in accord with any such interpretation of this statute. It is true that there are expressions in judicial opinions which give color to that claim. Such statements, however, while entitled to respect, are the dicta of the writers. In the reported decisions on questions relating to taxation and education the line of demarcation, although at times indistinct, is, nevertheless, discernible. In all matters relating to taxation the courts may still be invoked to grant relief. It is inconceivable that the Legislature ever intended to divest the courts of their jurisdiction over property rights of the inhabitants of the State and confer that authority on the administrative head of a governmental department whose decision is beyond review, merely because some question concerning the education of our youth is involved. If exclusive jurisdiction touching such matters is lodged in the Commissioner then, by reason of the finality of his decision, his power is immeasurably greater than that of the Supreme Court. Legislation of that character is quite a radical departure from all our conceptions concerning the underlying principles of our government. When the Legislature intends any such result, it will state its policy in language that cannot be misunderstood. The fundamental law of the land prescribes that the property of the citizen cannot be taken except by due process of law. In my judgment that means vastly more than an adjudication by some public officer whose decision is supreme and that the courts are ousted of jurisdiction to review his acts. Conceding that the Commissioner has authority to make a determination where the question of taxation is directly involved, certainly his judgment is neither final nor conclusive. Neither is it a necessary prerequisite that persons injuriously affected by any such pronouncement should first make an appeal to him for relief. I entertain not the slightest doubt that the court has jurisdiction of this action.

As to whether or not a cause of action is stated in the complaint depends very largely upon a construction of sections 467 and 480 of the Education Law. So far as I can discover, this is a question of first impression. Subdivision 1 of section 467 (as amd. by Laws of 1925, chap. 102; since amd. by Laws of 1926, chap. 115) provides: " A majority of the voters of any school district, present at any annual or special district meeting, duly convened, may authorize such acts and vote such taxes as they shall deem expedient for making

additions, alterations, repairs or improvements, to the sites or buildings belonging to the district, or for the purchase of other sites or buildings, or for a change of sites, or for the purchase of land and buildings for agricultural, athletic, playground or social center purposes, or for the erection of new buildings, or for buying apparatus, implements, or fixtures, or for paying the wages of teachers, and the necessary expenses of the school, or for the purpose of paying any judgment, or for such other purpose relating to the support and welfare of the school as they may, by resolution, approve."

Subdivision 1 of section 480 (as amd. by Laws of 1925, chap. 102; since amd. by Laws of 1926, chap. 115) reads as follows: " For the purpose of giving effect to the provisions of section four hundred and sixty-seven of this chapter, trustees or boards of education are hereby authorized, whenever a tax shall have been voted to be collected in installments, for the purpose of building a new schoolhouse, or building an addition to a schoolhouse, or making additions, alterations or improvements to buildings or structures belonging to the district or city, or for the purchase of a new site or for an addition to a site, or for the purchase of land or buildings for agricultural, athletic, playground, or social center purposes, or for the purchase of furniture, fixtures and equipment for any such buildings and playgrounds, or for the purpose of paying any judgment, to borrow so much of the sum voted as may be necessary, at a rate of interest not exceeding six per centum, and to issue bonds or other evidences of indebtedness therefor, which shall be a charge upon the district, and be paid at maturity, and which shall not be sold below par. In districts having an aggregate full valuation of real property of five hundred thousand dollars or over, no bonds shall be hereafter issued which make the total bonded indebtedness, at any time, exceed fifteen per centum of the aggregate full valuation of the real property within the bounds of such school district, unless the resolution authorizing the issue and sale of such bonds, in excess of such amount, shall be adopted by a vote of two-thirds of the qualified electors present and voting on such resolution at the meeting called for such purpose. The full valuation of taxable property shall be determined by the ratio, as ascertained by the state tax commission, which the assessed valuation of such property bears to the actual or full valuation of such property."

It is apparent that section 480 was enacted for the purpose of giving effect to the provisions of section 467. Section 480 specifically provides that in a district such as this " no bonds shall be hereafter issued which make the total bonded indebtedness, at

any time, exceed fifteen per centum of the aggregate full valuation of the real property within the bounds of such school district, *unless the resolution authorizing the issue and sale of such bonds, in excess of such amount, shall be adopted by a vote of two-thirds of the qualified electors present and voting on such resolution at the meeting called for such purpose.*" The resolution under consideration was adopted by a majority of two and not by the requisite two-thirds, and consequently the defendants were not authorized to incur an expenditure of $105,000. It seems to me that they have no authority to incur any indebtedness for the purposes specified until a majority of the voters of the district shall have authorized them to do so in accordance with the provisions of section 467. No proposition to expend the sum of $92,000 was ever submitted to or voted upon by the taxpayers of the district. The proposition which was submitted called for an expenditure of $105,000. That was the proposition adopted, not by the required two-thirds vote, but by a bare majority of two. The resolution adopted by the defendants to expend $92,000 for a building and a site and to issue bonds therefor lacked the authorization of the taxpayers and consequently is void. To warrant such action on their part it was necessary to call a meeting for that purpose and to obtain the approval of the voters thereto. These defendants are not justified in assuming that because the electors ratified a proposition to expend $105,000 by a majority of the votes cast, that they were thereby given the authority to expend any less sum, which they, in their discretion, might deem proper and for the sanction of which only a majority vote is required. They are not warranted in speculating that the voters would have given their approval to a proposition directing the expenditure of $92,000 if it had been submitted to them in the proper way. The answer to that argument is that no such project was submitted or adopted. If the defendants are justified under the circumstances disclosed here in issuing and selling bonds amounting to $92,000 for a building and site, they may also, in the exercise of their discretion, issue and sell bonds for these purposes for any less amount. If they have the power to do this, then by analogous reasoning they have the right to purchase a site and erect a building at a cost of not to exceed $10,000. Such a determination, in all probability, would not be in accordance with the needs of the district, would not meet the approval of those who would be bound by the obligation and yet they would be powerless to prevent such a waste of the public funds. Can it be that the resolution adopted by the taxpayers confers upon the defendants such latitude in their actions? I think not. If the taxable inhabitants of this district are willing

to expend $92,000, or any other sum, for the purchase of a building and a site, the statute provides a simple method for ascertaining that intention and complying with it. The defendants should pursue the method prescribed by law for that purpose. In issuing the bonds in question without doing so they have transcended their powers.

The motion for judgment is denied, with costs.